## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| NEURO-COMMUNICATION SERVICES, INC. d/b/a HEARING INNOVATIONS, individually and on behalf of all others similarly situated, | Case No.: 4:20-cv-1275 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| THE CINCINNATI INSURANCE COMPANY; THE CINCINNATI CASUALTY COMPANY; AND THE CINCINNATI INDEMNITY COMPANY, | |
| Defendants. | |

Plaintiff Neuro-Communications Service d/b/a Hearing Innovations ("Plaintiff or "Hearing Innovations") brings this case on behalf of itself and all others similarly situated, against Defendants The Cincinnati Insurance Company, The Cincinnati Casualty Company, and The Cincinnati Indemnity Company ("Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.      Hearing Innovations provides comprehensive hearing and balance care for patients of all ages. Hearing Innovations takes pride in meeting the needs of all its patients, including their overall health.

2.      Like many audiology practices in Ohio, Hearing Innovations was forced to significantly curtail its practice due to COVID-19 (also known as the "Coronavirus" or "SARS-CoV-2"), and the civil authority orders issued by the Governor of Ohio  and the Ohio Department of Health (the "Ohio Civil Authority Orders"), as well as guidance issued by the American Academy of Audiology.

3.     Hearing Innovations sought to protect itself – and believed that it had protected itself – in the event that its operations were suspended or reduced for reasons outside of its control beyond just damage to the physical premises (such as fire), by purchasing an "all-risk" property CinciPak Policy through Defendants (the "Building and Personal Property Coverage Form"). *See* Exhibit A. An "all-risk" property policy provides broad coverage for losses resulting from any cause unless expressly excluded.

4.     Among other coverages, the Building and Personal Property Coverage Form *specifically* includes coverage for Business Income for twelve (12) months of actual loss sustained and Extra Expenses incurred. The policy also provides "Extended Business Income" coverage for reduction of Business Income and for Extra Expenses even once operations are resumed as well as coverage for action of Civil Authority for thirty (30) days.

5.     The Building and Personal Property Coverage Form purchased by Plaintiff do not include, and are not subject to, any exclusion for losses caused by viruses or pandemics. Had Defendants, as the drafters of the policy, wanted to exclude the risks of a virus or a pandemic, and related issues, like civil authority orders and social distancing, it could easily have done so in plain text like other insurance companies purport to do (without trying to retroactively rewrite their policies).

6.     Notwithstanding, when Plaintiff suffered an actual loss of Business Income and incurred Extra Expenses as a result of a covered cause of loss, Defendants

2

wrongfully – and in direct contravention of the policy – denied Plaintiff's insurance claim. *See* Exhibit B. Plaintiff is not alone. Defendants have systematically refused to pay all its insureds under its Business Income, Extra Expense, Extended Business Income, and Civil Authority coverages for losses suffered related to COVID-19.

## PARTIES

7.   Plaintiff Hearing Innovations is a corporation registered in Ohio with its principal places of business in Boardman, Ohio and Youngstown, Ohio. Hearing Innovations provides audiology and related hearing and balance services to its patients, many of which are elderly or are at high risk of severe illness from COVID-19.

8.   Defendants are all headquartered in, and citizens of, Ohio. Defendants at all relevant times sold and issued insurance policies in the State of Ohio and throughout the country, including, without limitation, to Hearing Innovations.

## JURISDICTION AND VENUE

9.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because (a) the Classes consist of at least 100 members; (b) at least one class members is not a citizen of Ohio; and (c) the amount in controversy exceeds $5,000,000 exclusive of interest and costs.

10.   This Court has personal jurisdiction over Defendants, because a substantial portion the alleged wrongdoing occurred in the state of Ohio, and Defendants have sufficient contacts with the state of Ohio. Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## FACTUAL BACKGROUND

11.     Plaintiff pays an annual premium of $2,279 to Defendants, who issued to Plaintiff a Policy No. ECP 055 17 19 / EBA 055 17 19, for the annual period beginning September 14, 2019. Plaintiff performed all its obligations under the Policy, including the payment of premiums. The covered premises are located at 755 Boardman Canfield Rd Ste C1, Boardman, Ohio, 44512-4387; and 4300 Belmont Ave, Youngstown, Ohio, 44505-1084.

12.     Some insurance policies cover specific and identified risks, such as hurricanes or fires. However, most property policies, including those sold by Defendants, are "all-risk" policies. These types of policies cover _**all**_ risks of loss, and only exclude narrow and specifically enumerated risks.

13.     In the Building and Personal Property Coverage Form (the policy issued to Plaintiff), Defendants agreed to pay "for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." A Covered Cause of Loss is defined as "direct 'loss'" except those that are expressly and specifically excluded or limited. *See* Exhibit A, Building and Personal Property Coverage Form, at A.3. A "loss" is defined as "accidental physical loss or accidental physical damage." *Id.* at G.8.

14.     Losses due to COVID-19 and the Ohio Civil Authority Orders are a Covered Cause of Loss under Defendants' policies with the Building and Personal Property Coverage Form because they constitute direct "loss" and are not otherwise excluded.

4

15.     In the Building and Personal Property Coverage Form, apart from general coverage, as part of additional coverages, Defendants agreed to pay for Plaintiff's actual loss of Business Income sustained due to the suspension of Plaintiff's operations. Specifically, the Policy provides:

> **(1)  Business Income**
>
> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

*See* Exhibit A, Building and Personal Property Coverage Form, at A.5.b.(1).

16.     The Building and Personal Property Coverage Form further includes Extra Expense coverage which covers "necessary expenses you sustain . . .during the 'period of restoration' that you would not have sustained if there had been no direct 'loss' to property caused by or resulting from a Covered Cause of Loss."  *See* Exhibit A, Building and Personal Property Coverage Form, at A.5.b.(2).

17.     The Building and Personal Property Coverage Form also includes Civil Authority coverage, under which Defendants agreed to pay for the actual loss of Business Income sustained when access to the scheduled premises is prohibited by

order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area. *See* Exhibit A, Building and Personal Property Coverage Form, at A.5.b.(3) ("[w]hen a Covered Cause of Loss causes damage to property other than Covered Property at a 'premises', we will pay for the actual loss of 'Business Income' and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the 'premises'...").

18.     The Building and Personal Property Coverage Form also provides Extended Business Income coverage which provides that Defendants "will pay for actual loss of 'Business Income' you sustain and Extra Expense you incur" after "'operations' are resumed[.]" *See* Exhibit A, Building and Personal Property Coverage Form, at A.5.b.(6). This additional coverage has been extended to last for 12 consecutive months after operations are resumed. *See* FORM FCP 206 05 16. Extended Business Income coverage is meant to provide coverage for lost Business Income during the time it takes a business to bounce back from the suspension of its business operations once it restarts.

19.     Moreover, not only are Business Income and the related coverages provided for in the Building and Personal Property Coverage Form, but an endorsement entitled Business Income (And Extra Expense) Coverage Form (FORM FA 213 05 16) is also affixed to the Policy and further provides for these coverages. *See also* Exhibit B ("Additionally, the Policy at Form FA 213 05 16 provides separate Business Income and Extra Expense coverage provisions[.]").

20.     As explained below, the proliferation of COVID-19 throughout the State of Ohio and throughout the Mahoning Valley, and the related Ohio Civil Authority Orders issued by local, state, and federal authorities constitute a Covered Cause of Loss triggering the Business Income, Extra Expense, Civil Authority, and Extended Business Income provisions of the Building and Personal Property Coverage Form, and of Form FA 213 05 16.

### A. *Covered Cause of Loss*

### 1. <u>COVID-19</u>

21.     On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a "Public Health Emergency of International Concern."[1] Later, on March 11, 2020, the WHO declared COVID-19 a global health pandemic. On March 13, 2020, President Trump declared a national emergency in the face of a growing public health and economic crisis due to the COVID-19 global pandemic.

22.     In the State of Ohio alone, there have been over 38,000 confirmed cases of COVID-19, and approximately 2,400 related deaths.[2] In Mahoning County, where Hearing Innovations is located, there have been over 1,500 confirmed cases of COVID-19, and 195 deaths.[3]

---

[1]https://www.who.int/news-room/detail/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov) (last visited June 10, 2020).
[2]https://coronavirus.ohio.gov/wps/portal/gov/covid-19/dashboards/overview (last visited June 9, 2020).
[3] *Id.*

23.     Published research suggests that the virus that causes COVID-19 remains stable and transmittable for up to three hours in aerosols, up to four hours on copper, up to twenty-four hours on cardboard, and up to two to three days on plastic and stainless steel.[4]

### 2.     Ohio Civil Authority Orders

24.     The presence and physical spread of this deadly virus and the pandemic have caused civil authorities to issue orders requiring the suspension of businesses, including civil authorities with jurisdiction over Plaintiff's practice, to slow down the deadly and dangerous spread of COVID-19. Nearly every state in the country, including Ohio, has or had an order restricting the operation of non-essential businesses.

25.     These Ohio Civil Authority Orders include:

   a.   On March 9, 2020, Ohio Governor Mike DeWine issued Executive Order No. 2020-01D, "Declaring A State of Emergency". The March 9 Order declared a "state of emergency…for the entire State to protect the well-being of the citizens of the Ohio from the dangerous effects of COVID-19."

   b.   On March 17, 2020, Director of Ohio Department of Health Amy Acton issued the "Director's Order for the Management of Non-essential

---

[4]https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days (last visited June 10, 2020).

Surgeries and Procedures throughout Ohio".[5] The March 17 Order stated that "all non-essential or elective surgeries and procedures that utilized PPE should be concluded."

c. On March 22, 2020, Director of Ohio Department of Health Amy Acton issued the "Director's Stay Safe Ohio Order". Under the March 22 Order "all individuals currently living within the State of Ohio are ordered to stay at home" unless an exception applies, and "[a]ll persons may leave their homes or place of residence only to participate in activities, businesses or operations as permitted in this Order."

26. In addition, on March 22, 2020, the American Academy of Audiology's Executive Committee stating that "[a]udiology practices are 'non-essential'" recommending "[t]he most important thing we can do to protect our patients right now is to shut our physical doors."[6] In addition, the Centers for Disease Control and Prevention ("CDC") have made similar recommendations to postpone elective and non-urgent visits.

27. As a result of COVID-19, the Ohio Civil Authority Orders, the direction from the American Academy of Audiology, as well as information from other sources, including the Ohio Department of Health, Plaintiff ceased almost all its operations on March 23, 2020 and only resumed some operations on May 4, 2020.

**3.    Impact of COVID-19 and Ohio Civil Authority Orders**

---

[5] https://www.wksu.org/post/coronavirus-orders-issued-ohio (last visited June 10, 2020).
[6] https://www.audiology.org/message-academy-executive-committee-0 (last visited June 10, 2020).

28.     Hearing Innovations and the proposed Classes defined below have suffered an actual loss of Business Income and incurring Extra Expenses due to the suspension of operations. In the case of Hearing Innovations, it had been forced to almost entirely cease business activities.

29.     The presence of COVID-19 and the Ohio Civil Authority Orders (and similar civil authority orders) constitute a Covered Cause of Loss, as they constitute "accidental physical loss or accidental physical damage."

30.     Moreover, the suspension of Plaintiff's operation was caused by "accidental physical loss or accidental physical damage" in the form of both a loss of access to the property for business purposes caused by COVID-19, and the Ohio Civil Authority Orders and the actual damage in the form of the likely physical presence of COVID-19 on or within the property.

31.     Hearing Innovations is aware that at least one of its patients died as a result of COVID-19 shortly after being seen at the premises.  Another patient had COVID-19 and had to be treated at the hospital.  Plaintiff's main patient population is over the age of 70 and is in a high-risk category for death due to COVID-19.

32.     Plaintiff reopened on May 4, 2020. Plaintiff has incurred expenses such as purchasing masks, gloves, and plexiglass in order to reopen. After reopening, Plaintiff had less than half its normal revenue.

33.     COVID-19 and the Ohio Civil Authority Orders also implicated the Civil Authority coverage, because:

a. COVID-19 caused direct damage to property other than Covered Property at the "premises";

b. Access to the area immediately surrounding the damaged property was prohibited (for their business purposes) by civil authority as a result of the damage;

c. The action of civil authority was taken in response to dangerous physical conditions resulting from COVID-19;

d. Plaintiff suffered an actual loss of Business Income and sustained Extra Expense caused by the action of the civil authority that prohibited access (for business purposes) to the "premises".

34. Having suffered a necessary suspension of operations implicating coverage, on or about March 23, 2020, Plaintiff submitted a claim to Defendants under its policy. Without any true investigation, Defendants denied Plaintiff's claim. *See* Exhibit B.

35. Defendants based this denial primarily on:

a. The alleged lack of "direct, physical loss"; and

b. A purported lack of "evidence that the [civil authority] order was entered because of direct damage to property at other locations or dangerous physical conditions at other locations" and because "the order does not restrict access to the area immediately surrounding your premises".

36. As summarized by Defendants:

> This claim does not satisfy the Policy's insuring agreement. The claim does not involve direct, physical loss to property at your premises caused by a Covered Cause of Loss.

11

37.    None of these purported reasons are credible bases for Defendants' denial of Plaintiff's claim. First, as described above, in the context of COVID-19 and the Ohio Civil Authority Orders, there was a suspension of operations caused by direct "loss" to Covered Property at the "premises" caused by or resulting from a Covered Cause of Loss. That is all that is required to compel Defendants to provide Business Income coverage. Second, it strains credibility for Defendants to assert that the Ohio Civil Authority Orders were not entered because of COVID-19 around the premises. Further, the Ohio Civil Authority Orders restricted (business) access to Plaintiff's premises.

38.    The simple truth is that Defendants pre-determined its intent to deny coverage for the COVID-19 pandemic (and related civil authority orders), despite the complete absence, in the context of Business Income, Extra Expense, Extended Business Income, or the Civil Authority coverage, of a virus or pandemic exclusion.

39.    Defendants, as sophisticated insurance companies, knows how to exclude viruses when they want to. Indeed, the Insurance Services Offices, Inc. ("ISO") developed a virus exclusion in the wake of the outbreak of Severe Acute Respiratory Syndrome or "SARS" in the early 2000s. Defendants' policy does not contain any relevant exclusions for viruses even though such exclusions are now commonplace.

40.    In fact, the only reference to "viruses" in the entire policy are computer viruses. *See e.g.*, Ex. A at E.b.7.d.3 ("For the purpose of this Coverage Extension only,

12

Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system...").

41.     Boiled to its essence, the subject matter of this case is simple. Defendants have, on a widespread and class-wide basis, refused to provide Business Income, Extra Expense, Civil Authority, and Extended Business Income coverage for covered losses related to COVID19 and the related orders by civil authorities that have required the suspension of operations ***no matter*** the language or scope of coverage in any particular insurance policy.

## CLASS ALLEGATIONS

42.     Plaintiff brings this action individually and on behalf of the following similarly situated classes (the "Classes") pursuant to Rule 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

43.     Plaintiff seeks to represent nationwide classes defined as follows:

### Business Income Breach Class

All persons and entities that: (a) had Business Income coverage under a property insurance policy without a virus exclusion issued by Defendants; (b) suffered a suspension of their operations related to COVID-19 or the Ohio Civil Authority Orders (or other civil authority order related to COVID-19) impacting the premises covered by their property insurance policy; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied Business Income coverage by Defendants.

### Extra Expense Breach Class

All persons and entities that: (a) had Extra Expense coverage under a property insurance policy without a virus exclusion issued by Defendants; (b) suffered a suspension of their operations related to COVID-19 or the Ohio Civil Authority Orders (or other civil authority order related to COVID-19) impacting the premises covered by their

13

property insurance policy and incurred Extra Expenses; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied Extra Expense coverage by Defendants.

## Civil Authority Breach Class

All persons and entities that: (a) had Civil Authority coverage under a property insurance policy without a virus exclusion issued by Defendants; (b) suffered a loss of Business Income or incurred Extra Expenses caused by an order of a civil authority that prohibited access to the premises covered by their property insurance policy as the result of damage caused by COVID-19 to property in the surrounding area of the insureds covered property; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied Civil Authority coverage by Defendants for the loss of Business Income.

## Extended Business Income Breach Class

All persons and entities that: (a) had Extended Business Income coverage under a property insurance policy without a virus exclusion issued by Defendants; (b) suffered a suspension of their operations related to COVID-19 or the Ohio Civil Authority Orders (or other civil authority order related to COVID-19) impacting the premises covered by their property insurance policy; (c) had a loss of "Business Income" or incurred "Extra Expenses" after reopening; (d) made a claim under their property insurance policy issued by Defendants; and (e) were denied Extended Business Income coverage by Defendants.

44.    Plaintiff also seeks to represent nationwide declaratory judgment classes defined as follows:

## Business Income Declaratory Judgment Class

All persons and entities with Business Income coverage under a property insurance policy without a virus exclusion issued by Defendants that suffered a suspension of their operations related to COVID-19 or the Ohio Civil Authority Orders (or other civil authority order related to COVID-19) impacting the premises covered by their property insurance policy.

### Extra Expense Declaratory Judgment Class

All persons and entities with Extra Expense coverage under a property insurance policy without a virus exclusion issued by Defendants that suffered a suspension of their operations related to COVID-19 or the Ohio Civil Authority Orders (or other civil authority order related to COVID-19) impacting the premises covered by their property insurance policy and incurred Extra Expenses.

### Civil Authority Declaratory Judgment Class

All persons and entities with Civil Authority coverage under a property insurance policy without a virus exclusion issued by Defendants that suffered a loss of Business Income or incurred Extra Expense caused by an order of a civil authority that prohibited access to the premises covered by their property insurance policy as the result of damage caused by COVID-19 to property in the surrounding area of the insureds covered property.

### Extended Business Income Declaratory Judgment Class

All persons and entities with Extended Business Income coverage under a property insurance policy without a virus exclusion issued by Defendants that suffered a suspension of their operations related to COVID-19 or the Ohio Civil Authority Orders (or other civil authority order related to COVID-19) impacting the premises covered by their property insurance policy and suffered a loss of Business Income or incurred Extra Expense after reopening.[7]

45.     Excluded from the proposed Classes are Defendants, any parent companies, subsidiaries, affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter, as well as members of their staff and immediate families. Plaintiff reserves the right to amend the Class definitions above or add appropriate subclasses during or following discovery.

---

[7] The four Declaratory Judgment Classes together will be referred to as the "Declaratory Judgment Classes."

46.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

47.     The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Classes in a single action will provide substantial benefits to the parties and the Court.

48.     This action involves common questions, which predominate over questions affecting individual members of the Classes, including (without limitation):

- whether members of the Classes suffered a covered cause of loss based on the common policies issued by Defendants;

- whether COVID-19 (and/or an order of a civil authority related to COVID-19) constitutes a Covered Cause of Loss;

- whether Defendants' Business Income coverage applies to a suspension of business operations caused by COVID-19 (and/or by an order of a civil authority related to COVID-19);

- whether Defendants' Extra Expense coverage applies to Extra Expenses caused by COVID-19 (and/or by an order of a civil authority related to COVID-19);

- whether Defendants' Extended Business Income coverage applies to a suspension of business operations caused by COVID-19 (and/or by an order of a civil authority related to COVID-19);

- whether a suspension of business operations caused by COVID-19 (and/or by an order of a civil authority related to COVID-19) qualifies as a suspension of business operations caused by direct loss;

16

- whether an order by a civil authority related to COVID-19 (including the Ohio Civil Authority Orders) qualifies an insured for Civil Authority coverage;

- whether members of the Classes sustained damages as a result of Defendants denying their claims made under the common policies; and

- whether Defendants breached their contracts of insurance by denying Class members' Business Income, Extra Expense, Extended Business Income, and Civil Authority claims related to COVID-19.

49. Defendants engaged in a course of common conduct that gave rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes. Identical business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

50. Plaintiff's claims are typical of those of the members of the Classes because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct, including the systematic denial of insurance coverage related to Business Income insurance and COVID-19.

51. Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Class members, and has retained counsel competent and experienced in class action and consumer protection litigation.

52. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small enough such that, absent representative litigation, it would be infeasible for many members of the Classes to redress the wrongs done to them. Moreover,

17

individualized litigation would create potential for inconsistent judgments on identical issues and increase the delay and expense to the parties and the Court. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of adjudication by a single court.

53.     As a result of the foregoing, class treatment under Federal Rule of Civil Procedure 23(b)(3) is appropriate.

54.     Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(1). Plaintiff seeks class-wide adjudication related to Defendants' Business Income, Extra Expense, Extended Business Income, and Civil Authority coverages. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent adjudications.

55.     Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive and declaratory relief.

## CLAIMS FOR RELIEF

### CLAIM I: BREACH OF CONTRACT - Business Income Coverage
### (Plaintiff Individually and on Behalf of the Business Income Breach Class)

56.     Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

57.     Plaintiff brings this claim against Defendants individually and on behalf of the members of the Business Income Breach Class.

18

58.     Plaintiff's insurance policy, as well as those of the members of the Business Income Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Business Income Breach Class Members' losses for claims covered by Defendants' all-risk policy.

59.     The Building and Personal Property Coverage Form states that Defendants "will pay for the actual loss of 'Business Income' you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The 'suspension' must be caused by direct 'loss' to the property at 'premises'...caused by or result from a Covered Cause of Loss."

60.     "Suspension" means in relevant part: "[t]he slowdown or cessation of ...business activities[.]" and "Operations" is defined as "business activities occurring at the 'premises'" and "tenantability of the 'premises.'"

61.      "Business Income" is defined as "Net Income (net profit or loss before income taxes) that would have been earned or incurred" and "[c]ontinuing normal operating expenses sustained, including payroll."

62.     Period of Restoration is:

"Period of restoration" means the period of time that:

a.   Begins at the time of direct "loss".

b.   Ends on the earlier of:

(1)  The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2)  The date when business is resumed at a new permanent location.

63.     COVID-19, and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders) caused a "direct loss" to property at a covered premises under the Plaintiff's policy, and the policies of the other Business Income Breach Class members, by denying use of and damaging the property, and by causing a necessary suspension and reduction of operations during a period of restoration.

64.     Losses caused by COVID-19, and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders) thus triggered the Business Income provision of Plaintiff's and the other members of the Business Income Breach Class' insurance policies.

65.     Plaintiff and the members of the Business Income Breach Class have complied with all applicable provisions of their policies.

66.     Plaintiff and the members of the Business Income Breach Class made timely claims under their property insurance policies issued by Defendants.

67.     Defendants have breached their coverage obligations under Plaintiff and the Business Income Breach Class Members' policies by denying coverage for any Business Income losses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders).

68.     As a direct and proximate result of Defendants' breaches, Plaintiff and the members of the Business Income Breach Class have sustained damages for which Defendants are liable, in an amount to be established at trial.

## CLAIM II: BREACH OF CONTRACT – Extra Expense Coverage
## (Plaintiff Individually and on Behalf of the Extra Expense Breach Class)

69.     Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

70.     Plaintiff brings this claim against Defendants individually and on behalf of the members of the Extra Expense Breach Class.

71.     Plaintiff's insurance policy, as well as those of the members of the Extra Expense Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Extra Expense Breach Class Members' losses for claims covered by Defendants' all-risk policy.

72.     The Building and Personal Property Coverage Form states that Defendants "will pay Extra Expense you sustain during the 'period of restoration.' Extra Expense means necessary expenses you sustain . . . during the 'period of restoration' that you would not have sustained if there had been no direct 'loss' to property caused by or resulting from a Covered Cause of Loss."

73.     COVID-19, and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders) caused "direct loss" to the "Covered Property" under the Plaintiff's policy, and the policies of the other Extra Expense Breach Class members, by denying use of and damaging the Covered Property, and by causing a necessary suspension and reduction of operations during a period of restoration.

74. Losses caused by COVID-19, and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders) thus triggered the Extra Expense provision of Plaintiff's and the other members of the Extra Expense Breach Class' insurance policies.

75. Plaintiff and the members of the Extra Expense Breach Class have complied with all applicable provisions of their policies.

76. Plaintiff and the members of the Extra Expense Breach Class made timely claims under their property insurance policies issued by Defendants.

77. Defendants have breached their coverage obligations under Plaintiff and the Extra Expense Breach Class Members' policies by denying coverage for any Extra Expenses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders).

78. As a direct and proximate result of Defendants' breaches, Plaintiff and the members of the Extra Expense Breach Class have sustained damages for which Defendants are liable, in an amount to be established at trial.

### CLAIM III: BREACH OF CONTRACT – Civil Authority Coverage (Plaintiff Individually and on Behalf of the Civil Authority Breach Class)

79. Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

80. Plaintiff brings this claim against Defendants individually and on behalf of the members of the Civil Authority Breach Class.

81.     Plaintiff's policy, as well as those of the members of the Civil Authority Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Civil Authority Breach Class Members' losses for claims covered by the policy.

82.     Plaintiff's policy, as well as those of the members of the Civil Authority Breach Class are extended to apply to:

> When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

83.     COVID-19 caused the Governor of the State of Ohio and the Ohio Department of Health to issue the Ohio Civil Authority Orders, which prohibited access to Plaintiff and the Civil Authority Breach Class Members' scheduled premises based on damage to property in the surrounding area of the scheduled premise.

84.     Losses caused by COVID-19 thus triggered the Civil Authority provision of Plaintiff and the Civil Authority Breach Class Members' insurance policies.

85.     Plaintiff and the Civil Authority Breach Class Members have complied with all applicable provisions of their policies.

86.     Plaintiff and the Civil Authority Breach Class Members made timely claims under their property insurance policies issued by Defendants.

87.     Defendants have breached their coverage obligations under Plaintiff and the Civil Authority Breach Class Members' policies by denying coverage for any Civil Authority losses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders).

88.     As a direct and proximate result of Defendants' breaches, Plaintiff and the Civil Authority Breach Class Members have sustained damages for which Defendants are liable, in an amount to be established at trial.

### CLAIM IV: BREACH OF CONTRACT – Extended Business Income Coverage
### (Plaintiff Individually and on Behalf of the Extended Business Income Breach Class)

89.     Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

90.     Plaintiff brings this claim against Defendants individually and on behalf of the members of the Extended Business Income Breach Class.

91.     Plaintiff's insurance policy, as well as those of the members of the Extended Business Income Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Extended Business Income Breach Class Members' losses for claims covered by Defendants' all-risk policy.

92.     The Building and Personal Property Coverage Form states that Defendants will pay for actual loss of "'Business Income' you sustain and Extra Expense you incur" after "'operations' are resumed[.]"  COVID-19, and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders) caused actual loss of Business Income and Extra Expenses. Plaintiff and the members of the Extended Business Income Breach Class continue to incur loss of Business Income and to sustain Extra Expenses even once operations are resumed.

93.     Losses caused by COVID-19, and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders) thus triggered the Extended Business Income provision of Plaintiff's and the other members of the Business Income Breach Class' insurance policies.

94.     Plaintiff and the members of the Extended Business Income Breach Class have complied with all applicable provisions of their policies. Plaintiff and the members of the Extended Business Income Breach Class made timely claims under their property insurance policies issued by Defendants.

95.     Defendants have breached their coverage obligations under Plaintiff and the Extended Business Income Breach Class Members' policies by denying coverage for any Extended Business Income losses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders).

96.    As a direct and proximate result of Defendants' breaches, Plaintiff and the members of the Extended Business Income Breach Class have sustained damages for which Defendants are liable, in an amount to be established at trial.

**CLAIM V: DECLARATORY JUDGMENT – DECLARATORY JUDGMENT**
**(Claim Brought on Behalf of the Declaratory Judgment Classes)**

97.    Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

98.    Plaintiff brings this claim against Defendants individually and on behalf of the members of the Declaratory Judgment Classes.

99.    Plaintiff's policy, as well as those of the members of the Declaratory Judgment Classes, are contracts under which premiums were paid to Defendants in exchange for promises to pay losses for claims covered by their insurance policies.

100.    Plaintiff and the members of the Declaratory Judgment Classes have complied with all applicable provisions of the policies.

101.    Defendants have denied claims related to COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders) on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Declaratory Judgment Classes have filed a claim.

102.   An actual case or controversy exists regarding Plaintiff and the Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to provide reimbursements for the full amount of losses incurred by Plaintiff and the Declaratory Judgment Classes Members in connection with COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders).

103.   Pursuant to 28 U.S.C. § 2201, Plaintiff and the Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

   a.   Plaintiff and the Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with necessary interruption of their businesses due to the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders) are insured losses under their policies; and

   b.   Defendants are obligated to pay Plaintiff and the Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses incurred and to be incurred in connection with the period of restoration and the necessary interruption of their businesses stemming from the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders).

104.   Pursuant to 28 U.S.C. § 2201, Plaintiff and the Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

   a.   Plaintiff and the Extra Expense Declaratory Judgment Class Members' Extra Expenses incurred in connection with necessary interruption of their businesses due to the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders) are insured losses under their policies; and

     b.  Defendants are obligated to pay Plaintiff and the Extra Expense Declaratory Judgment Class Members for the full amount of the Extra Expenses incurred and to be incurred in connection with the period of restoration and the necessary interruption of their businesses stemming from the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders).

105.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

     a.  Plaintiff and the Civil Authority Declaratory Judgment Class Members' Business Income losses caused by an order of a civil authority that prohibited access to the premises covered by their property insurance policy as the result of damage caused by COVID-19 to property in the surrounding area of the insureds covered property are insured losses under their policies; and

     b.  Defendants are obligated to pay Plaintiff and the Civil Authority Declaratory Judgment Class for the full amount of the Business Income losses incurred and to be incurred caused by an order of a civil authority that prohibited access to the premises covered by their property insurance policy as the result of damage caused by COVID-19 to property in the surrounding area of the insureds covered property.

106.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the Extended Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

     a.  Plaintiff and the Extended Business Income Declaratory Judgment Class Members' Business Income losses and Extra Expenses during the period when operations resumed incurred in connection with necessary interruption of their businesses due to the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders) are insured losses under their policies; and

28

b.  Defendants are obligated to pay Plaintiff and the Extended Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses and Extra Expenses losses incurred and to be incurred during the period when operations resumed in connection with necessary interruption of their businesses stemming from the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Ohio Civil Authority Orders).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment against Defendants as follows:

i.  Entering an order certifying each of the proposed Classes;

ii.  Entering an order designating Plaintiff as Class Representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

iii.  Entering judgment on Counts I, II, III, and IV in favor of Plaintiff, the Business Income Breach Class, the Extra Expense Breach Class, Civil Authority Breach Class; and Extended Business Income Breach Class and awarding damages for breach of contract in an amount to be determined at trial;

iv.  Entering declaratory judgments on Count V in favor of Plaintiff and the Declaratory Judgment Classes (as set forth in Count V);

v.  Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

vi.  Ordering Defendants to pay reasonable attorneys' fees and costs of suit; and

vii.  Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.


Date:  June 10, 2020                    /s/Gregory F. Coleman
                                        Gregory F. Coleman*
                                        **GREG COLEMAN LAW**
                                        First Tennessee Plaza

800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
greg@gregcolemanlaw.com

Shanon J. Carson*
Y. Michael Twersky*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
scarson@bm.net
mitwersky@bm.net
T: 215-875-4656

Daniel K. Bryson*
Patrick M. Wallace*
**WHITFIELD BRYSON LAW LLP**
900 W. Morgan Street
Raleigh, NC 27605
T: 919-600-5000
F: 919-600-5035
dan@whitfieldbryson.com
pat@whitfieldbryson.com

*pro hac vice forthcoming*

*Attorneys for Plaintiff and the putative classes*